## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **RICHARDSON BAY ENVIRONMENTAL PROTECTION ASSOCIATION,** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | **Civil No. 21-cv-00613 (APM)** |
| **FEDERAL AVIATION ADMINISTRATION,** ) ) | |
| **Defendant.** ) ) | |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.     INTRODUCTION

Plaintiff Richardson Bay Environmental Protection Association (the "Association" or "RBEPA") brings the instant Freedom of Information Act ("FOIA") action seeking records from Defendant Federal Aviation Administration ("FAA"). The Association seeks records discussing or describing FAA investigations into complaints of registration violations by Seaplane Adventures, LLC ("Seaplane"). Defendant produced documents, videos, and photographs to Plaintiff, which included some redactions and withholdings pursuant to FOIA Exemptions 6 and 7. On March 8, 2021, Plaintiff filed suit, objecting to the adequacy of the FAA's search and the decision to redact and withhold certain records.

Before the court are the parties' cross-motions for summary judgment. Def.'s Mot. for Summ. J., ECF No. 13 [hereinafter Def.'s Mot.]; Pl.'s Mot. for Summ. J., ECF No. 14 [hereinafter Pl.'s Mot.]. For the reasons that follow, Defendant's motion is granted in part, and Plaintiff's motion is denied in full.

## II.     BACKGROUND

Plaintiff Association is a non-profit corporation consisting of a group of neighbors that live adjacent to Richardson Bay in the San Francisco Bay Area.  Pl.'s Mot., Decl. of William Schneider, ECF No. 14-3 [hereinafter Schneider Decl.], ¶ 4.  The Association's "mission is to monitor activities that impact the health, safety, and quality of life of Richardson Bay, or otherwise harm its local residents, wildlife, and/or the Richardson Bay environment."  *Id.*  Plaintiff and Seaplane, a commercial operator of sightseeing seaplane flights on Richardson Bay, appear to have a "long-standing dispute."  Def.'s Mot., Decl. of Nicholas Toaso, ECF No. 13-1 [hereinafter Toaso Decl.], ¶ 7; *see* Schneider Decl. ¶ 5 ("Seaplane Adventures . . . has a history of conflicts with the residents of the Richardson Bay area.").  "Over the past several years, the Association has filed numerous complaints with the FAA against Seaplane," alleging that Seaplane "operated an aircraft that was not properly registered" and "engaged in reckless flying."  Toaso Decl. ¶ 7.  Plaintiff has also "submitted numerous FOIA requests to the FAA for information related to Seaplane and the FAA's responses to the Association's registration and reckless flying complaints."  *Id.*

### A.     Edgcomb Letters and Plaintiff's Hotline Complaint

On July 23, 2018, and August 13, 2018, Plaintiff's attorney sent two letters to the FAA, which "referenc[ed] alleged complaints of registration violations by [Seaplane's] aircraft N123JL" (the "Edgcomb Letters").  Def.'s Mot., ECF No. 13-3 [hereinafter FOIA Request], at 1.  Roughly a year-and-a-half later, in December 2019, the Association filed a complaint with the FAA Hotline reporting system against the Oakland Flight Standards District Office ("Oakland FSDO"), alleging that the office was "negligent or intentionally derelict in their failure to investigate complaints of serious registration violations by Seaplane" raised in the Edgcomb Letters.  Schneider Decl. at 35.

On August 19, 2020, Plaintiff submitted a FOIA request to the FAA (the "Request"). Toaso Decl. ¶ 4. The Request sought all FAA records "that discuss or describe" the Edgcomb Letters, including "all records in the possession or control of the FAA . . . that discuss or describe any investigation of the registration complaint issues . . . any records containing information or communications received . . . and any FAA records that discuss or describe any FAA decisions or FAA actions in responding to the FAA complaint letters from Mr. Edgcomb." FOIA Request at 1.

### B.     Oakland FSDO Search

The FOIA Analyst reviewing the Request concluded that the Oakland FSDO was the office most likely to possess responsive records because it "is primarily responsible for investigations of regulatory violations in the region where Seaplane is located and would likely maintain all accompanying documentation, analysis, and records responsive to the request." Toaso Decl. ¶ 10. "The FOIA Analyst provided the Oakland FSDO subject matter experts ('SME') with the language in the Request" and "instructed the relevant SME" to search for responsive documents. *Id.* ¶ 11. The SME "interpreted the Request broadly as seeking any and all records that made note of the alleged Seaplane Registration violation for N123JL," which included "investigative files related to investigations into other non-registration complaints against Seaplane, but which reference the registration violation complaint for N123JL." *Id.* ¶ 13. Because the Request stated that Plaintiff was "not seeking duplicate copies of any responsive records that were previously provided by the FAA," FOIA Request at 1, the FOIA Analyst and SME "agreed to release only those files not previously disclosed." *Id.* ¶ 14.

According to Defendant, "[t]he Oakland FSDO maintains all records in its possession related to the investigation of Seaplane's alleged Registration violations in two locations": (1) an "online Project Tracker" and (2) "a physical filing cabinet containing hardcopy folders." *Id.* ¶ 15.

"The Project Tracker contains a short summary about the complainant, the N number of the plane at issue, and the complaint number for any alleged violations." *Id.* ¶ 16. The SME searched the Project Tracker "only to identify the complaint numbers relevant to the Request so that she could then search for the responsive hardcopy complaint files." *Id.* ¶ 17. In other words, the Project Tracker "acted as a directory that enabled the SME to pinpoint responsive records in the Oakland FSDO's main record system," which is the physical filing cabinet. *Id.*

The Oakland FSDO organizes its hardcopy files using the investigation numbers assigned to each complaint. *Id.* ¶ 20. The hardcopy investigative files "contain the investigative records associated with the Oakland FSDO's investigation of the complaint, a printed copy of relevant emails (if any), and any other documents related to that particular investigation." *Id.* ¶ 18. "The SME pulled the responsive records associated" with the complaint numbers obtained from the "Project Tracker[,] and then pulled all files that had not been disclosed to the requestor in previous FOIAs." *Id.* ¶ 20. The SME scanned and emailed "all documents she had located pursuant to her search to the FOIA Analyst." *Id.* ¶ 21. "[T]he Oakland FSDO SME searched only these hard copy files for records responsive to the Request, and determined it would not be necessary to search in other locations." *Id.* ¶ 18. The SME "verified with the Inspector in Charge, and current and former staff members who worked on the case, for potential responsive records in their possession, including emails, photos, notes, video records or conversations that they maintained." *Id.* ¶ 19. "However, the individuals who worked on the case confirmed that all emails and records regarding the alleged violations had been stored in the hardcopy files." *Id.*

### C.    FOIA Exemptions 6 and 7

The FOIA Analyst reviewed the records the Oakland FSDO SME sent and determined that "any records containing references to the Association's registration violation complaints were

4

responsive to the Request." *Id.* ¶ 21.  The FOIA Analyst excluded records "already made available to the Association through other FOIA requests" and assessed whether any of the remaining responsive records were exempt from disclosure.  *Id.*  On October 1, 2020, Defendant advised Plaintiff "that it was withholding in full the responsive records under Exemption 7(A) . . . because there was an ongoing law enforcement investigation and premature release would interfere with the agency's investigation." *Id.* ¶¶ 23–24.  On October 18, 2020, the Association appealed the denial, on the grounds that FAA applied Exemption 7(A) "in an overly broad manner" and failed "to undertake an adequate search for responsive records." *Id.* ¶¶ 25–26.

In December 2020, Defendant told Plaintiff that the investigation into Seaplane's alleged registration violations was ongoing due to the Association's December 2019 complaint against "the FAA through the FAA Hotline Reporting System alleging that the Oakland FSDO had not thoroughly investigated the registration violation." *Id.* ¶ 29; *see* Schneider Decl. at 35.  Because there was a "pending[1] hotline complaint by the Association against the Oakland FSDO," Defendant contended, "the registration complaint could not close," and the FAA was required to withhold the responsive records under Exemption 7(A).  Toaso Decl. ¶ 29.

### D.    FOIA Litigation and Production of Responsive Records

On March 8, 2021, while the FAA was purportedly "process[ing] the Association's administrative appeal in order to remand it once the investigation was closed," the Association filed the instant action. *Id.* ¶ 30.  That same month, the FAA reviewed "the records initially withheld in October 2020" and determined that they could now be "released because the

---

[1] Defendant's explanation cannot be squared with the facts in the record, which show that the Hotline investigation into the Oakland FSDO's handling of the Association's complaints closed on February 25, 2020—nearly six months before the Association filed its FOIA request. *See* Second Decl. of Nicholas Toaso, ECF No. 21-1 [hereinafter Second Toaso Decl.] at 24 (showing Hotline complaint #A20191113009 filed on December 18, 2019 against Oakland FSDO); Schneider Decl. at 35 (showing FAA Hotline investigation #A20191113009 concluded on February 25, 2020). Nevertheless, this factual dispute is not material and therefore does not preclude a summary judgment ruling.

investigation regarding Seaplane's alleged registration violation was closed." *Id.* ¶ 34.  On May 27, 2021, "the FAA released 60 pages of records previously withheld in full," with some redactions of personal information under Exemption 6.  *Id.* ¶ 35.

*Regulatory Support Division* ("*AFS-600*").  "During the Oakland FSDO's review of its previously withheld records, the FOIA Analyst identified several pages within the investigative records that originated within another office in Flight Standards, the Regulatory Support Division ('AFS-600')."  *Id.* ¶ 36.  The FOIA Analyst determined it was "possibl[e] that AFS-600 might maintain other records responsive to the Association's Request," and in May 2021, the Request was assigned to AFS-600.  *Id.*  In June 2021, the AFS-600 SME performed a search of the Project Tracking and Reporting Subsystem ("PTRS") using the relevant complaint and aircraft numbers, and identified as responsive "all records located that referenced the registration investigations and/or registration determinations for Seaplane and aircraft number N123JL," excluding records previously provided to the Association pursuant to another FOIA request.  *Id.* ¶¶ 40–41. The AFS-600 SME located three pages[2] of responsive records, which were redacted pursuant to Exemption 6 and produced to the Association on June 25, 2021.  *Id.*  On September 28, 2021, AFS-600 disclosed an additional nine pages of responsive records to the Association with redactions pursuant to Exemptions 6 and 7(C).  *Id.* ¶ 61.

*Duplicates.*  In June 2021, Plaintiff clarified that the Request sought documents that "had already [been] provided to the Association pursuant to the Association's previous FOIA requests," and Defendant agreed to search for and produce such documents.  *Id.* ¶ 42.  "[T]he Oakland FSDO reconstructed the original search," *id.* ¶ 43, and pulled responsive documents from the hardcopy files, "includ[ing] any records that may have previously been disclosed to the Association in

---

[2] Plaintiff contends that AFS-600 released a "production of three records comprising <u>six pages</u>." Schneider Decl. ¶ 41 (emphasis in original).  This disputed fact is not material and, again, does not preclude a summary judgment ruling.

response to other FOIA requests," *id.* ¶ 44.  "As with the original search, the Oakland FSDO SME determined that the Program Tracker records were not [themselves] responsive."  *Id.* ¶ 43.  The Oakland FSDO SME provided the "documents it had previously deemed unresponsive to AFS-600," which "conducted a supplemental search of its PTRS records."  *Id.* ¶ 45.  At the end, the Oakland FSDO found "178 pages of complaint files that it had previously released to the Association pursuant to previous FOIAs."  *Id.* ¶ 46.  Defendant withheld three pages under FOIA Exemption 7(A) on the grounds that the investigations into those complaints were ongoing, and it redacted some of the records pursuant to Exemption 6.  *Id.* ¶ 47.

*Aircraft Registration Branch.*  Defendant found seven documents at the Oakland FSDO that were not included in the hard copy investigative files.  *Id.* ¶ 50.  The documents were uncovered when searching for "documents involving the Oakland FSDO's registration investigation" and "documents explaining why a new investigation was not opened after the Association appealed the Oakland FSDO's registration determination."  *Id.*  Defendant "disclose[d] the additional seven pages to the Association to help clarify why the Oakland FSDO had not found Seaplane in violation of registration requirements," "even though some of the emails were outside the time period requested."  *Id.*  Because the seven pages involved emails with the Aircraft Registration Branch, "the Oakland FSDO reached out to the Aircraft Registration Branch and requested that their SMEs perform a search for any additional information available."  *Id.* ¶ 51.  While the Aircraft Registration Branch's "system does not contain records regarding alleged violation complaints and investigations, it does contain information about when it had issued Seaplane its registrations or extended temporary registrations."  *Id.* ¶ 52.  The Aircraft Registration Branch searched for documents related the Oakland FSDO registration investigation from 2016 through 2018 and found the same documents as the Oakland FSDO.  *Id.* ¶ 53.

In sum, Defendant conducted searches at the "Oakland FSDO (which conducted the investigation), AFS-600 (which maintains a system containing investigative notes), and the Aircraft [Registration Branch]." *Id.* ¶ 62. Defendant states that "[t]here are no other locations within the FAA, and no additional search terms or other search parameters, that are likely to locate additional responsive records." *Id.* Defendant identified as responsive "187 pages of documents and 18 videos and photographs." *Id.* ¶ 63. Three of the 187 pages were withheld under FOIA Exemption 7(A) "because the investigations are still open, and release of these records would interfere with those investigations." *Id.* Of the remaining 184 pages, 97 were redacted to protect personal privacy under Exemptions 6 and 7(C). *Id.*

## III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Media Rsch. Ctr. v. U.S. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). The court

may enter summary judgment based solely upon information provided in affidavits or declarations when those affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exception, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "An agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal alteration omitted)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).  Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA, and the FOIA claim is moot.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## IV.   DISCUSSION

### A.   Exemptions 6 and 7(C)

The FAA redacted 97 pages under FOIA Exemptions 6 and 7(C), including "personal emails, office cell phone numbers and complainant names."  Toaso Decl. ¶ 72.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7 protects law enforcement records or information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).

Plaintiff does not contest the propriety of Defendant's redactions under Exemptions 6 and 7(C).  *See generally* Pl.'s Mot., Pl.'s Mem. in Opp. to Def.'s Mot. and in Supp. of Pl.'s Mot., ECF No. 14-1 [hereinafter Pl.'s Mem.].  Accordingly, summary judgment is granted with respect to Defendant's Exemptions 6 and 7(C) redactions.  *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### B.    Exemption 7(A)

Exemption 7(A) protects law enforcement records or information when disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  "[T]o withhold documents pursuant to Exemption 7(A), an agency must show that they were compiled for law enforcement purposes and that their disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).  Defendant "withheld three pages of records pertaining to [two] complaints" on the grounds that those records "are part of an on-going investigation by the FAA and are therefore being fully withheld under FOIA Exemption 7(A)."  Def.'s Mot.[3] at 34, *id.* at 35 ("[I]f, through these investigations, the FAA ultimately determines a regulatory violation has occurred, depending on the context of the violation the FAA could take enforcement [actions] against Seaplane.").

Plaintiff does not contest that the documents were compiled for law enforcement purposes or that an FAA enforcement action qualifies as an "enforcement proceeding" under

---

[3] The court uses ECF pagination for Defendant's Motion for Summary Judgment.

Exemption 7(A).  *See Mapother*, 3 F.3d at 1540 ("Exemption 7 applies to civil and regulatory proceedings as well as to criminal matters.") (internal quotation marks omitted).  Plaintiff contends that the 7(A) withholdings are improper because "the FAA's direct investigation of the specific complaints in the" Edgcomb Letters "had been formally closed by the agency by June 29, 2019." Pl.'s Mem. at 15.  Defendant responds that the withheld records involved different complaints that were "still an open investigation at the time the records were being reviewed."  Def.'s Combined Reply in Further Supp. of its Mot. and Opp'n to Pl.'s Cross-Mot, ECF No. 21 [hereinafter Def.'s Opp'n], at 10.  Plaintiff is correct that the investigations into the specific complaints in the Edgcomb letters—CWP27201844 and CWP27201866—are complete.  *See* Schneider Decl. at 42. However, Defendant did not withhold records related to those complaints.  *See* Def.'s Mot. at 34 ("[T]he FAA withheld three pages of records pertaining to complaints CWP272019105 and CWP272019106.").  The record shows that the 7(A) withholdings relate to complaints that were still open investigations.  Toasa Decl. ¶ 65 ("Three pages of records pertaining to complaints CWP272019105 and CWP272019106 are part of an on-going investigation by the FAA.").

Defendant argues that Exemption 7(A) is applicable because "individuals filed the complaints for law enforcement purposes[,] the complaints allege violations of FAA regulations," and the "FAA compiled the records to investigate whether an enforcement action should be brought . . . if those violations were substantiated."  *Id.* ¶ 66.  Defendant contends that "release of the complaint files and any evidence collected could give the potential defendant an opportunity to withhold further information regarding the evidence."  *Id.* ¶ 67; *see also* Def.'s Mot. at 35 ("Release of this information could also harm the agency's position in court if the FAA ultimately determined to take enforcement action against the subject of the investigation.").  Plaintiff counters that Defendant fails to "identify[] the specific nature of [the] investigation, the applicable FAA file

or investigation number it pertains to, or the dates which that investigation was allegedly initiated by the agency," without citing any authority requiring Defendant to do so.  Pl.'s Reply Mem. in Supp. of Pl.'s Mot., ECF No. 23 [hereinafter Pl.'s Opp'n], at 17.

The court finds that disclosure of the withheld records "could reasonably be expected to interfere" with a future FAA enforcement proceeding based on the withheld complaints. *Mapother*, 3 F.3d at 1540.  Exemption 7(A) is "available where enforcement proceedings are 'pending or contemplated.'"  *Id.* (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980).  "The word 'contemplated' . . . speaks to the enforcing agency's intentions."  *Id.*  Defendant has stated that the investigations into these complaints are still open and if "the FAA ultimately determines a regulatory violation has occurred . . . the FAA could take enforcement [actions] against Seaplane."   Toaso Decl. ¶ 66.   The court finds that these representations sufficiently establish the applicability of Exemption 7(A).  *Cf. Coastal States*, 617 F.2d at 870 (rejecting 7(A) exemption because the agency "made no effort whatsoever in the district court to demonstrate that any of these cases are still under investigation or being actively pursued").

## C.     Segregability

"It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Even when FOIA exemptions apply, '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'") (quoting 5 U.S.C. § 552(b)).  However, an agency "need not disclose a redacted version of the [record] if the unredacted markings would 'have minimal or no

information content.'" *Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1069 (D.C. Cir. 2023) (quoting *Mead Data Ctr.*, 566 F.2d at 261). "When an agency demonstrates that a record is exempt . . . it is 'entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material.' Because FOIA requesters lack access to the withheld records, they will often be unable to 'rebut[ ] this presumption.'" *Id.* at 1068–69 (quoting *Sussman*, 494 F.3d at 1117).

Plaintiff argues that Defendant "improperly applied its segregability requirement" because there is "undisputed evidence" that "portions of records in complaint number CWP272019106" "contain references to the specific airplane registration issues . . . sought by RBEPA's August 19, 2020 FOIA request." Pl.'s Mem. at 16–18; *see* Schneider Decl. ¶ 33 (The FAA cannot "properly claim any 'ongoing investigation' as to those portions of records from the CWP272019106 complaint file which refer to the registration issues that are the subject of the August 19, 2020 FOIA request at issue in this action."). Defendant responds that there are no "portions that could be segregated without revealing the content of the investigation." Def.'s Opp'n at 10. Furthermore, Defendant contends that the CWP272019106 complaint concerns another unrelated incident and only makes "passing reference" to the registration complaints in Plaintiff's FOIA request. *See* Def.'s Mot., Ex. 9, ECF No. 13-11, at 3 n. 3 ("Note that while these pages are responsive to your FOIA request in that they make passing reference to your registration complaint, these complaint files pertain primarily to your complaints related to reckless flying."); Tosca Decl. ¶ 13 (explaining that the agency 'interpreted the Request broadly' and included "investigative files related to investigations into other non-registration complaints against Seaplane, but which reference the registration violation complaint for N123JL").

For the reasons stated above, the records at issue fall within Exemption 7(A).  Accordingly, the FAA is "entitled to a presumption that it complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117.  Plaintiff provides no evidence to overcome that presumption.  *See Perioperative Servs.*, 57 F.4th at 1068–69 (noting that FOIA requesters are "often unable" to rebut this presumption).  Furthermore, Plaintiff gives the court no reason to question Defendant's representation that references to the relevant complaints within the withheld records are made only in "passing" and therefore are not subject to disclosure.

### D.    Adequacy of Search

"The fundamental principle animating FOIA is public access to government documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).  Accordingly, agencies are required "to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents."  *Id.*  While "[t]here is no requirement that an agency search every record system," an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena*, 180 F.3d at 325 (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  Importantly, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  "A reasonably detailed

14

affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched, is necessary to . . . allow the district court to determine if the search was adequate in order to grant summary judgment." *Id.* "The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate . . .* [which] is judged by a standard of reasonableness." *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original).

Plaintiff contends that Defendant fell short of conducting an adequate search because Defendant failed to: (1) "undertake **any** search at key FAA component offices"; (2) "perform an adequate search for responsive records at the Aircraft Registration Branch office"; (3) "perform an adequate search at the Oakland Flight Standards District Office that failed to locate many responsive records"; and (4) "undertake appropriate follow-up search actions, where there was clear evidence of additional responsive records which had not been located." Pl.'s Mem. at 6 (emphasis in original). The court addresses each argument in turn.

### 1.    *FAA Component Offices*

Plaintiff contends that Defendant's failure to conduct searches at the FAA's Office of Audit & Evaluation ("AAE") and Office of Security and Hazardous Materials ("ASH") was improper because "those offices were clearly directly involved with the agency's 'Hotline' investigation" into the Oakland FSDO. *Id.* at 7. Specifically, Plaintiff contends that the FAA did not conduct an adequate search because it failed to turn over AAE and ASH records related to the Hotline complaint that Plaintiff filed against the FAA, which alleged that the Oakland FSDO conducted an improper investigation into the Association's registration complaints against Seaplane. *See id.* at 7 ("[T]hese FAA offices were directly and actively involved in the specific 'Hotline'

investigation . . . [h]owever, the agency failed to task either of those offices to perform any search actions in responding to Plaintiff's FOIA request.").  Plaintiff asks the court to instruct FAA to search these two offices.

Defendant argues that ASH and AAE were not searched "because neither office investigates alleged registration violations, and because the FAA would not expect responsive records to exist in those locations."  Def.'s Opp'n at 4.  "ASH conducts internal investigations into FAA personnel and offices in response to allegations of violations of law or internal agency policy," Defendant continues, and "AAE administers the FAA's hotline complaint program . . . [which] refers complaints to the office within the FAA most equipped to investigate the complaint."  *Id.*  Because those offices were not likely to possess responsive records, the "FAA directed Plaintiff's FOIA request regarding Seaplane flying without a valid registration to the Oakland FSDO," the office that is "primarily responsible for investigations of regulatory violations in the region where Seaplane is located and would likely maintain all accompanying documentation, analysis, and records responsive to the request."  *Id.*  Furthermore, Defendant asserts that the records were "outside the scope" of the Association's instant FOIA request, *id.* at 6, because "the FOIA request subject of this litigation did not cite the December 18, 2019 hotline complaint" against the Oakland FSDO, which was filed nearly a year and a half after the two 2018 complaints against Seaplane cited in the Edgcomb Letters, Second Decl. of Nicholas Toaso, ECF No. 21-1 [hereinafter Second Toaso Decl.], ¶ 13.

The court finds that Defendant's decision not to search ASH and AAE was reasonable.  As a threshold matter, the records are arguably outside the scope of Plaintiff's FOIA request, which seeks records "referencing alleged complaints of registration violations" by Seaplane.

FOIA Request at 1.  The AAE and ASH records at issue relate to a 2019 Hotline complaint[4] filed by the Association against *the Oakland FSDO*, not Seaplane.  Second Toaso Decl. ¶ 12.  Accordingly, the records are likely not responsive to Plaintiff's request.

Even if the records were responsive, the FAA has met its obligation "to explain in its affidavit that no other record system was likely to produce responsive documents."  *See Oglesby*, 920 F.2d at 68.  The FAA's affidavit explains that "ASH conducts internal investigations into FAA personnel and offices in response to allegations of violations of law or internal agency policy" and "AAE administers the FAA's hotline complaint program," which intakes complaints and "then refers complaints to the office within the FAA most equipped to investigate the complaint."  Second Toaso Decl. ¶¶ 5–6.  It is reasonable to determine that an office responsible for internal FAA investigations (ASH) and an intake office that refers complaints to the relevant investigating offices (AAE) would not possess records related to investigations of private parties.  The FAA has therefore met its obligation to explain why ASH and AAE were not "likely to produce responsive documents."  *Cf. Oglesby*, 920 F.2d at 68 (finding search inadequate where "[t]he affidavit does not show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents" and does not "identify the terms searched or explain how the search was conducted.").

### 2.    *Aircraft Registration Branch*

The FAA Aircraft Registration Branch conducted a search which "did not locate any responsive records in addition to those records the Oakland FSDO had already found."  Toaso

---

[4] Plaintiff identifies two documents to suggest that Defendant should have searched AAE and ASH.  *See* Pl.'s Mem. at 7 (citing Schneider Decl. at 35, 37).  Those records are related to the Hotline complaint the Association filed against the Oakland FSDO.  Plaintiff has not presented any evidence showing that the Edgcomb complaints were initiated through the FAA's Hotline complaint system.  Accordingly, there is no reason to believe that AAE and ASH would possess similar documents related to Edgcomb's complaints against Seaplane.

Decl. ¶ 53.  Plaintiff asks the court to require Defendant to perform a follow-up search at the Aircraft Registration Branch because Plaintiff "independently obtained and has identified three records directly from the Aircraft Registration Branch" that are responsive to the Association's request.  Pl.'s Mem. at 7.

The court finds that the three letters independently obtained by Plaintiff from the Aircraft Registration Branch are not responsive to the Association's Request.  Two of the documents are titled "Aircraft Bill of Sale," and while they reference Seaplane and aircraft N123JL, they do not discuss the Edgcomb Letters or any alleged registration violation.  *See* Schneider Decl. at 77, 79. The third document is an April 23, 2018, letter sent from the Aircraft Registration Branch to Seaplane.  *See id.* at 75.  The document pre-dates the Edgcomb Letters, which were sent in July and August 2018, and thus cannot be responsive, as the Request seeks records that "discuss or describe" the registration violations mentioned in the Edgcomb Letters.  FOIA Request at 1. Accordingly, the court finds Defendant's search of the Aircraft Registration Branch was adequate.

### 3.    Oakland FSDO

Plaintiff objects to the FAA's decision to only search a "physical filing cabinet" at the Oakland FSDO, "based solely upon agency staff claiming that **all** of their responsive records . . . [were] stored in the hard copy file system."  Pl.'s Mem. at 8–9 (emphasis in original). Because Defendant did "not search[] **any other** locations, including the relevant individual staff's own computer records at this Oakland FSDO location," Plaintiff argues the search was inadequate. *Id.* at 9 (emphasis in original).  Furthermore, Plaintiff independently identified 10 documents from the Oakland FSDO which, in Plaintiff's view, are responsive and "were never located by the agency's very limited search of 'a physical filing cabinet' undertaken at that location."  *Id.* Defendant retorts that the documents identified by Plaintiff are unresponsive because (1) "there is

18

no particular need to produce back to plaintiff documents that plaintiff or his counsel already have," (2) the FAA "is not obligated to produce records that post-date plaintiff's request," and (3) "[d]ocuments related to processing a FOIA are nonresponsive to the FOIA request itself." Def.'s Opp'n at 7.

Five of the 10 documents Plaintiff points to are communications between the Association, Edgcomb, and the FAA informing the Association about the status of its FOIA requests. *See* Schneider Decl. at 42, 48–54.  Defendant argues that these documents are not responsive because Plaintiff already possesses these documents.  Def.'s Opp'n at 7.  Defendant cites no authority for the proposition that an agency is not required to provide documents already in the requestor's possession.  *See id.*  In fact, the opposite appears true.  *See Delta Ltd. v. U.S. Customs and Border Prot. Bureau*, 384 F. Supp. 2d 138, 148 (D.D.C. 2005) ("Simply because [the] plaintiff may already have certain documents in its possession . . . does not lessen the requirement that an agency follow the guidelines and regulations provided under the FOIA.").  However, Plaintiff's Request did not ask for records concerning the processing of the Request.  *See* FOIA Request. Half of the records cited by Plaintiff are thus non-responsive and therefore are not indicative of an inadequate search.

Three of the records are not responsive to the Request for other reasons.  Plaintiff's contention that Exhibit L "directly references complaints involving 'improper or lack of aircraft registration'" made by Edgcomb is misleading.  Pl.'s Mem. at 10.  Exhibit L does state that the Oakland FSDO received and investigated complaints against Seaplane for "improper or lack of aircraft registration," but does not mention the Edgcomb Letters or the specific registration complaints.  Schneider Decl. at 59–60.  The email mentioned Edgcomb only to say that he was responsible for "the majority of the complaints" against Seaplane.  *Id.* at 60.  Exhibit M mentions

19

Edgcomb's name but says nothing about Seaplane registration violations.  *Id.* at 62.  Exhibit N is an internal FAA email that includes "N123JL"—Seaplane's registration number—in the subject line but says nothing more to indicate that the email is related to the registration violation allegations in the Edgcomb Letters.  *Id.* at 64.

As for the last two documents—Exhibits K and P—the court finds that they are potentially responsive.  But the fact that Plaintiff can identify two responsive documents that the FAA did not produce does not, without more, indicate an inadequate search.  *See Steinberg*, 23 F.3d at 551 (stating that the inquiry "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate").

Still, the court cannot grant summary judgment in favor of Defendant.  Defendant has not explained to the court's satisfaction why all potentially responsive records within the Oakland FSDO would be located within a physical filing cabinet.  In this day and age, it is hard to conceive that no potentially responsive records could be found in electronic form.  Defendant does not, for example, say that there is a procedure within the Oakland FSDO that requires employees to place all documentation pertaining to an investigation—including emails—in the physical filing cabinet. Thus, while the selection of the Oakland FSDO as a search location was reasonable, absent some explanation for why responsive records would exist only in physical filing cabinet, the court cannot find the search of the Oakland FSDO adequate.  Because this "record leaves substantial doubt" as to the procedures the Oakland FSDO followed and "the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt*, 897 F.2d at 542.

### 4.   *Follow-Up Searches*

Finally, Plaintiff argues that the FAA's search was inadequate because it did not conduct follow-up searches based on information available to it.  Specifically, Plaintiff identifies two

photographs and an email attachment, which the agency did not produce.[5]  Pl.'s Mem. at 11–12.

Defendant responds that the FAA has since provided Plaintiff with the photographs and email

attachment, and thus "has undertaken all follow up actions to ensure that all additional responsive

records have been disclosed."  Def.'s Opp'n at 9.  Plaintiff disagrees, arguing that the "FAA has

still failed to provide one of the four photographic records the agency said it had found and would

produce."  Pl.'s Opp'n at 13.  Because a dispute of material facts exists, the court makes no ruling

on this issue.

## V.      CONCLUSION

For the stated reasons, Defendant's Motion for Summary Judgment, ECF No. 13, is granted

in part.  Plaintiff's Motion for Summary Judgment, ECF No. 14, is denied in full.  Defendant may

submit a supplemental declaration by April 18, 2023, and renew its motion for summary judgment

on the two issues on which the court did not enter judgment in its favor.


Dated:  March 17, 2023

Amit P. Mehta
United States District Judge

---

[5] Plaintiff argues that Defendant failed to provide records describing the "ongoing investigation" cited by the FAA in support of the Exemption 7(A) withholding.  Pl.'s Mem. at 12; *see* Schneider Decl. ¶ 15 ("Although the FAA currently claims that the Hotline investigation remained open during the" relevant time period, "the agency has to date not produced any responsive records establishing any agency ongoing actions for this hotline complaint.").  Plaintiff's argument misstates the facts.  The documents that were withheld under Exemption 7(A) were related to complaints CWP272019105 and CWP272019106, which raised reckless flying complaints against Seaplane.  Def.'s Mot. at 34. As explained above, those complaints are not related to the complaints referenced in the Edgcomb Letters.